BEER, Judge.
Elson J. Brouillette was demoted from Maintenance Electrician to Maintenance Repairman by the Sewerage and Water Board on March 18,1977. Though reinstated on May 23, 1977, he appealed his demotion to the Civil Service Commission, which affirmed the action of the appointing authority.[1] He alleges here that the appointing authority did not sustain its burden of proving that Brouillette failed “to perform the duties of his position in a satisfactory manner,” according to City Civil Service Rule IX, § 1.1, and, also, alleges that the Board failed to establish performance standards for Maintenance Electricians as required by LSA-R.S. 33:2418.
The facts are not in serious dispute: As early as August 12, 1974, Brouillette had been seen by Dr. William Johnston, complaining of symptoms of vertigo. Harry Quebedeaux (one of Brouillette’s supervisors) became aware that dizziness was curtailing Brouillette’s performance of his work in February, 1976, when he discovered Brouillette sweeping the floor rather than performing the duties of a maintenance electrician. Quebedeaux testified that Brouillette told him that he could not climb because of his vertigo problem. Quebe-deaux confirmed this particular incident by memo to Louis S. Meridier, Chief of Facility Maintenance, suggesting that Brouillette’s anniversary raise be denied in view of the fact that no confirmation from the medical department supported his alleged inability. Thereafter, however, Dr. Johnston gave Brouillette a work slip dated February 26, 1976, which prohibited climbing because of a history of vertigo. This was followed on *11 March 31, 1976, by Dr. Johnston’s medical statement confirming that Brouillette suffered from recurrent episodes of vertigo and should not work over open areas.
Subsequent to these developments, on March 18, 1977, Brouillette was demoted because of his inability to climb. Then, on May 19, 1977, Dr. Johnston reported that the source of Brouillette’s problem was not vertigo but prolonged hyperextension of the neck, and, thus, Dr. Johnston indicated that Brouillette could resume his former duties. Consequently, Brouillette was, shortly thereafter, reinstated by letter of May 23, 1977.
These facts to the contrary notwithstanding, Brouillette did not inform his supervisors of the new diagnosis because he was waiting for VA hospital verification of Dr. Johnston’s new opinion. Thus, Quebedeaux accurately testified that there was no indication by Brouillette — prior to the issuance of the letter of demotion — that he had become able to perform the duties of his classification. The contrary was true: as of the demotion date, Brouillette was unable or unwilling to perform the full duties of a maintenance electrician.
Stuart H. Brehm, Executive Director of S&WB, testified that the demotion was an administrative decision based on the fact that the Board could not properly pay Brouillette for a job description that he could not perform.
With written reasons, the Civil Service Commissioner held that the demotion was reasonable under the circumstances.
The record confirms that Brouillette was, during the time his demotion was in effect, unable or unwilling to properly perform his assigned duties. The job description of a maintenance electrician includes maintenance and repair of electrical equipment in a safe, efficient and reliable manner and the medical statement of Dr. Johnston sufficiently indicates that Brouillette could not safely perform all such duties due to his then thought to exist condition.
Brouillette also contends that the appointing authority’s failure to specify specific standards in the job description of Maintenance Electrician constitutes, thereby, a failure to meet the requirements of LSA-R.S. 33:2418 which requires that standards of performance “have reference to the quality and quantity of work done, the manner in which the service is rendered, . and such other characteristics as, in the opinion of the director, will measure the value of employees to the service.” However, working at heights and ladder use requirements are, implicitly, distinguishing features of work to be performed by a maintenance electrician, and the record is sufficiently complete to support a factual conclusion by the trier of the facts that such was the case.
With the hope of providing some guidelines for future reference, we hold as follows:
Where, as here, the record supports a factual conclusion that a Sewerage and Water Board employee is unable to safely perform the duties of his job, within a reasonable common sense description thereof, for medical or medically related reasons not caused or aggravated by a job-connected accident, the appointing authority has the right to demote or make such other administrative changes as will result in the job slot being filled by someone who is able in all respects to perform it fully and safely.
The judgment is affirmed, at appellant’s cost.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.

. Through a clerical oversight, Brouillette continued to receive the higher pay of a Maintenance Electrician during the period of his demotion.